**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| BENJAMIN M. EASTMAN and ) <br> MARCITA K. EASTMAN, ) <br> as Trustees of the ) <br> Eastman Family 1999 Revocable ) <br> Trust, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> COFFEYVILLE RESOURCES REFINING ) <br> & MARKETING, LLC, ) <br> ) <br> Defendant. ) | **CIVIL ACTION** <br><br> No. 10-1216-MLB |

**NUNC PRO TUNC MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment on plaintiffs' claim for punitive damages. (Doc. 57). The motion has been fully briefed and is ripe for decision. (Docs. 58, 62, 65). Defendant's motion is denied for the reasons herein.

**I. Facts**

The relevant and material facts of this case are not in dispute. The Coffeyville Resources refinery, located adjacent to the Verdigris River in Coffeyville, Kansas, processes crude oil and its constituents on a continuous basis. Plaintiffs are trustees of property located near Coffeyville, Kansas, in close proximity to the Verdigris River, approximately two or more miles downstream of the Coffeyville Resources refinery.

On July 1, 2007, an unprecedented 100 year flood of the Verdigris River necessitated an emergency shutdown of the Coffeyville Resources refinery. During the emergency shutdown, approximately 80,000 gallons

(over 1900 barrels) of crude oil, 5,000 gallons of diesel oil, and 4,000 gallons of crude oil fractions were accidentally released into the flood waters. The crude oil release was terminated within an hour or two of its inception.

Defendant mobilized clean-up crews, while monitored by the Environmental Protection Agency (EPA), to clean up oil on public and private property. Plaintiffs filed this lawsuit on June 30, 2010, alleging that oil carried by the flood waters impacted their pecan grove and that defendant has not cleaned up the oil. Plaintiffs allege that oil remains on their property and continues to impact their annual pecan harvests.

Plaintiffs bring a statutory claim pursuant to K.S.A. 65-6203. In addition to actual damages, plaintiffs seek punitive damages. In the proposed pretrial order, plaintiffs assert that defendant should have known that predicted severe flooding would cause serious damage to downstream neighbors and defendant's employees wantonly and recklessly[1] failed to close a valve on one of the oil storage tanks which allowed crude oil, diesel and other pollutants to flow downstream, damaging plaintiff's property.

Defendant moves for summary judgment on plaintiffs' punitive damages claim on the basis that the statute does not allow punitive damages.[2]

---

[1] K.S.A. 60-3701(c) does not authorize an award of punitive damages based on reckless conduct. Wanton conduct is defined in PIK4th Civil 103.03.

[2] In <u>Vowell, et. al v. Coffeyville Resources Refining and Marketing, LLC</u>, 2011 WL 148239 (D. Kan.), Judge Melgren noted that defendant had not raised this discrete issue and declined to address it. (<u>Id.</u>, fn 52). Judge Melgren denied summary judgment on

-2-

**II. Summary Judgment Standard**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**III. Analysis**

The statute at issue in this case states as follows:

> It shall be the duty of any person responsible for an **accidental release or discharge** of materials detrimental to the quality of the waters or soil of the state to: (1) **Compensate the owner** of the property where the release or discharge occurred **for actual damages** incurred as the result of the release or discharge, or as the result of corrective action taken or access to take corrective

---

plaintiffs' punitive damages claim, which doubtlessly explains why defendant has not filed a similar motion in this case.

action, if the release or discharge occurred without any contribution to the contamination and without any causal connection to the release or discharge by any action of the owner or owner-permitted occupant of the property; and (2) comply with all existing rules and regulations and requirements of the secretary of health and environment designed to ensure the prompt correction of any such release or discharge for the protection of the public health and environment.

K.S.A. 65-6203(a)(emphasis supplied).

In <u>Eastman v. Coffeyville Resources Refining & Marketing LLC</u>, 295 Kan. 470, 476-477 (Kan. 2012)[3], the Kansas Supreme Court held that the "clear and unambiguous language of K.S.A. 65-6203(a)(1) provides that any person responsible for the accidental release or discharge of materials detrimental to the quality of the waters or soil of the state has a 'duty' to '[c]ompensate the owner of the property where the release or discharge occurred for actual damages incurred as the result of the release or discharge, or as the result of corrective action taken or access to take corrective action.'" In <u>Eastman</u>, however, the court was not confronted with the issue of the availability of punitive damages.

> In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs. A jury may consider an award of punitive damages if any reasonable view of the evidence would support such an award. To constitute wantonness, the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have

---

[3] The Kansas Supreme Court decision in <u>Eastman</u> was the result of this court's certification of the following two questions: "(1) whether K.S.A. 65-6203 creates absolute liability, and (2) which statute of limitations, if any, applies to K.S.A. 65-6203?" 295 Kan. at 472. The answers to these questions had and continue to have implications in this case. They are not, however, relevant to the issue that is presently before the court.

-4-

>     refrained from taking steps to prevent the injury because
>     indifferent to whether it occurred or not.

Folks v. Kan. Power & Light Co., 243 Kan. 57, Syl. ¶ 6 (1988), overruled on other grounds by York v. InTrust Bank, 265 Kan. 271, 962 P.2d 405 (1998).

Defendant contends that this general rule regarding punitive damages is not applicable in actions brought pursuant to a statute which does not explicitly provide for punitive damages, citing Smith v. Printup, 254 Kan. 315 (1993). In Smith, the Kansas Supreme Court was faced with the question of whether punitive damages were available in a wrongful death action. In deciding the issue, the court looked at the statute in question which provided as follows:

> Damages may be recovered for, but are not limited to:
>
> (1) Mental anguish, suffering or bereavement;
> (2) loss of society, companionship, comfort or protection;
> (3) loss of marital care, attention, advice or counsel;
> (4) loss of filial care or attention;
> (5) loss of parental care, training, guidance or education; and
> (6) reasonable funeral expenses for the deceased.

K.S.A. 60-1904(a). In addition, the court noted that K.S.A. 60-1903 requires the jury to itemize its verdict in wrongful death actions to reflect the amount awarded for "nonpecuniary damages, expenses for the care of the deceased caused by the injury, and other pecuniary damages." Smith, 254 Kan. at 334. The statute "makes no provision for punitive damages." Id.

After reviewing authority from Kansas and other jurisdictions, the court determined that punitive damages were not allowed in a wrongful death action because the "statute does not authorize punitive damages and specifically identifies the type of damages that are

recoverable." Id. at 334-35 (emphasis supplied). Defendant contends that this court should interpret Smith as holding that punitive damages are not available in a statutory action which does not explicitly authorize punitive damages. The court does not find Smith to be that far reaching. The Smith court restrained its discussion to the wrongful death statute at issue and conducted an in depth analysis of authority in Kansas and other states in reaching its decision. In other decisions by the Kansas Supreme Court on this issue, the court has looked to the statute and the facts in the case to determine whether punitive damages were warranted.

In Geiger v. Wallace, 233 Kan. 656, (1983), the Kansas Supreme Court was faced with the question of whether punitive damages were allowed under the Kansas Residential Landlord and Tenant Act, K.S.A. 58-2540 et seq. That statute provides for damages sustained by a tenant and is silent as to punitive damages. The court held that punitive damages were available when a landlord acted "willfully and wantonly in violation of the tenant's rights." Geiger, 233 Kan. at 661.

The Kansas Supreme Court issued a similar decision in Equitable Life Leasing Corp. v. Abbick, 243 Kan. 513 (1988). In Abbick, the statute at issue was the Kansas Consumer Protection Act which allows a consumer aggrieved by a violation of the act to recover actual damages or a prescribed civil penalty, whichever is greater. K.S.A. 50-634(b). In holding that punitive damages were available, the court reasoned that there is "nothing in the KCPA [which] limits any other remedies provided by law." Abbick, 243 Kan. at 517. The court cited Geiger in support of its conclusion that punitive damages were

available even though K.S.A. 50-634(b) was silent on the issue. But the court also observed that "K.S.A. 1987 Supp. 50-646 specifically provides that nothing in the KCPA limits any other remedies provided by law." Id. No similar language appears in K.S.A. 65-6203(a) which is a "stand alone" statute.

In <u>Golconda Screw, Inc. v. West Bottoms Ltd.</u>, 20 Kan. App.2d 1002 (1995), a case decided after <u>Smith</u>, the Kansas Court of Appeals held that punitive damages were available in a statutory claim of fraudulent conveyance even though the statute was silent. The court stated that punitive damages are available in Kansas to "punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights." <u>Id.</u> at 1007. Therefore, as long as the facts supported a claim for punitive damages, the plaintiff could recover punitive damages.

The statute at issue in this case, K.S.A. 65–6203(a), states that "actual damages" are available to "compensate" the owner. The statute is silent as to punitive damages and neither limits nor expands the relief available under the statute. The court finds that the statutory language at issue here is similar to the statutes in <u>Geiger</u>, <u>Abbick</u> and <u>Golconda Screw</u>, which allowed for actual damages but were silent as to punitive damages. The statutory language in <u>Smith</u>, however, is not similar to this case or those statutes in <u>Geiger</u>, <u>Abbick</u> and <u>Golconda Screw</u> because the wrongful death statute provides specific classifications of damages and requires a special finding by the jury as to each damage type.

Contrary to defendant's position, the court does not find that <u>Smith</u> categorically denies punitive damages in all statutory actions

-7-

which do not expressly provide for punitive damages. The court finds that the reasoning in <u>Geiger</u>, <u>Abbick</u> and <u>Golconda Screw</u> is applicable in this case.

Accordingly, the court finds that punitive damages are available in an action pursuant to section 65-6203(a). The clear and convincing evidence presented at trial must support a finding, however, that defendant's actions were wanton. Moreover, the evidence must satisfy K.S.A. 60-3701(d)(1). If such evidence is presented, the jury will decide whether to award punitive damages and, if so, the amount of such damages. <u>Jones v. United Parcel Serv.</u>, 674 F.3d 1187, 1202-07 (10th Cir. 2012).[4]

**IV. Conclusion**

Defendant's motion for summary judgment on plaintiffs' claim of punitive damages is denied. (Doc. 57). Plaintiffs' motion for oral argument is denied. (Doc. 63). The final pretrial conference in this case will be held on September 3 at 1:45 p.m.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992). The response to any motion for reconsideration shall not exceed 3 double-spaced pages. No reply

---

[4] There is a practical side to allowing the jury to decide the issue of punitive damages. The jury will have to return a separate verdict and, if so instructed, answer special questions regarding the evidence supporting a finding of wanton conduct. In the event of appellate review, an award of punitive damages can be modified or set aside without disturbing a finding of liability for actual damages. But if defendant's motion is sustained and punitive damages are not presented to the jury, a later finding of error would require a second trial, which is in no one's interest.

-8-

shall be filed.

IT IS SO ORDERED.

Dated this __5th__ day of August 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE